The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned are of the opinion that the Deputy Commissioner erred in his findings and conclusion that plaintiff does not suffer from a compensable occupational disease. Accordingly, the Opinion and Award of June 17, 1993, is HEREBY REVERSED. The undersigned proceed to make their own Findings of Fact, Conclusions of Law, and ultimate Award. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their Findings of Fact, Conclusions of Law, and ultimate Award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is self-insured; Hewitt, Coleman Associates, Inc. was the servicing agent.
4. Plaintiff's last day of work with defendant was March 23, 1988.
5. Plaintiff was born December 12, 1924.
6. During the period of plaintiff's employment with defendant-employer, defendant processed cotton.
7. The following documents are stipulated into evidence:
Exhibit A — Industrial Commission Form 22.
Exhibit B — One page of personnel records.
Exhibit C — Two pages of company medical records.
Exhibit D — 126 pages of pulmonary function tests.
Exhibit E — 25 pages of respiratory questionnaires.
Exhibit F — Four pages of cotton dust level studies.
Exhibit G — 11 pages of medical records from Dr. T. Reginald Harris.
Exhibit H — 10 pages of medical records from Dr. David E. Shanks.
Exhibit I — 33 pages of medical records from Dr. David J. Deas.
Exhibit J — 46 pages of medical records from Dr. Thomas L. Murphy.
Exhibit K — 21 pages of medical records from Dr. Perry W. Aycock, Jr.
* * * * * * * * * * *
RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of David E. Shanks, M.D., and Edward E. Landis, Jr., M.D., are OVERRULED. Deputy Commissioner Taylor did not err in this determination.
* * * * * * * * * * *
Based upon all of the competent and convincing evidence adduced at the hearing and through subsequent depositions and stipulations, the undersigned make the following
FINDINGS OF FACT
1. Plaintiff was born on December 12, 1924. At the time of the initial hearing of the above-captioned matter, plaintiff was a 68 year old man. Plaintiff began working in textiles in 1941 at the age of 17 as a yarner in the spooler room at Firestone Mill in Gastonia, North Carolina. After working at Firestone Mill for one year, plaintiff then worked for four and a half years at Textiles, Inc., where he cleaned frames in the spinning department.
2. Plaintiff subsequently worked at Parkdale Mills doffing and spinning. Plaintiff also completed cleaning work at Parkdale Mills, which required plaintiff to clean frames with a mop. For thirteen years, plaintiff worked seven days a week. On Saturday night, plaintiff cleaned the entire spinning room with an air hose.
3. After working for twenty-three years in the spinning room at Parkdale Mills, plaintiff was transferred to the winder room. Plaintiff's duties in the winder room required plaintiff to clean the winders by using an air hose to blow off dust from the machines.
4. Plaintiff did not wear a dust mask while working in the winding room at Parkdale Mills. Plaintiff, however, wore a dust mask for two and one-half years while he worked in the spinning room during the 1970's, until Parkdale Mills installed an air conditioning system.
5. Plaintiff was exposed to 100% cotton and cotton dust during the entirety of his textile career, until he retired after thirty-five years from Parkdale Mills in 1988. Plaintiff's last day of work with defendant Parkdale Mills was March 23, 1988.
6. Plaintiff began smoking when he was approximately 22 years old. Plaintiff has smoked an average of over one pack of cigarettes per day since that time.
7. Plaintiff first noticed breathing problems in about 1978, when he noticed wheezing, coughing, and some shortness of breath. Subsequently, plaintiff had an FEV-1 in 1985 of 95% of predicted, which was still within the normal range. Plaintiff was then examined by Dr. David Shanks on referral from the Industrial Commission, as a member of the Occupational Disease Panel. At the time of plaintiff's evaluation by Dr. Shanks, plaintiff had an FEV of 44%.
8. During the time plaintiff worked for defendant-employer, respiratory surveillance and pulmonary function studies were conducted. On March 23, 1983, Mr. Marr's pre and post tests show that he was not reacting as a byssinotic at Parkdale Mills, even though he was exposed to cotton dust. Between this test and April 2, 1984, Mr. Marr began to react to his work environment. His test on April 2, 1984, showed a reduction in his before and after exposure FEV-1 and FVC tests. Both tests in 1984 showed a reduction in the FEV with workplace exposure. The 1985 tests also showed some reactivity to the work environment. However, as aforementioned, the 1985 test was still within the normal range. By 1988, plaintiff had experienced a significant decrease in his pulmonary function studies, and reactivity to the work environment.
9. Plaintiff now has a Class IV pulmonary impairment with a 50% to 70% whole person impairment.
10. Plaintiff's exposure to cotton dust was a significant contribution to his development of lung disease, and the workplace was certainly an aggravating and augmenting environment. Plaintiff was in a risk area for the development of an occupationally related lung disease. Cotton textile workers are more likely to develop lung diseases such as this one to which the general public is not equally exposed. Plaintiff suffers from chronic obstructive pulmonary disease and his workplace exposure was one of the significant factors in causing this disease. Plaintiff's chronic obstructive pulmonary disease and resulting disability was significantly aggravated and augmented by his occupational exposure to cotton dust.
11. Plaintiff's average weekly wage during his last year of employment was $257.13, yielding a compensation rate of $171.42 weekly.
12. Plaintiff has retired due to his lung disease as of this time, and there is no convincing evidence of plaintiff actively seeking employment at this time. He is incapable, because of his compensable lung disease, of returning to his former employment or any other employment in textiles according to Dr. Shanks. Plaintiff has convincingly shown and the undersigned have determined from the record that plaintiff is totally disabled a this time based upon the futility of trying to obtain employment at his age (68 at the time of the hearing, now 70), educational level (4th grade education), significant career of 35 years or so strictly in textiles, and inability to even accomplish such simple activities as washing and dressing due to shortness of breath as a result of his compensable chronic obstructive pulmonary disease.
13. Further, plaintiff is entitled to such medical compensation as may be necessary to effect a cure, give relief, or lessen plaintiff's disability. Such medical treatment may include appropriate bronchodilators such as by tablet form or aerosolized form, also mucolytics and expectorants, preventative anti-infectious program such as a pneumonia vaccination and yearly flu shots, and appropriate treatment of any respiratory infections with antibiotics. As is necessary for his bronchospasm, the addition of cortisone may be appropriate. Finally, in order to stabilize him and get him on a good program, physician visits may be needed at least monthly and once plaintiff is on a maintenance program, the visits may be lessened to every two months.
* * * * * * * * * * *
Based upon the foregoing findings of fact and stipulations, the undersigned make the following:
CONCLUSIONS OF LAW
1. Plaintiff's employment in the textile industry exposed plaintiff to a greater risk of contracting chronic obstructive pulmonary disease than a member of the general public. G.S. 97-53(13);Rutledge v. Tultex Corporation, 308 N.C. 85, 301 S.E.2d 359 (1983).
2. Plaintiff's occupational exposure to cotton dust, however, did significantly contribute (was a causal factor) to the development of his chronic obstructive pulmonary disease and did aggravate or accelerate his chronic obstructive pulmonary disease. G.S. 97-53(13); Rutledge v. Tultex Corporation, 308 N.C. 85,301 S.E.2d 359 (1983), See, Wilkins v. J. P. Stevens Company,333 N.C. 449, 426 S.E.2d 675 (1993).
3. Plaintiff has a disease and disability related to causes and conditions which are characteristic of, and peculiar to, the textile industry in which he worked. G.S. 97-53(13); Rutledge v.Tultex Corporation, 308 N.C. 85, 301 S.E.2d 359 (1983).
4. Plaintiff is, therefore, entitled to compensation under the North Carolina Workers' Compensation Act. G.S. 97-52.
5. Plaintiff is entitled to total disability at the rate of $171.42 weekly for such time as he remains disabled or until further order of the Commission.
6. Plaintiff is entitled to such medical expenses as may be necessary to effect a cure, give relief, or lessen plaintiff's disability. Such medical treatment may include, but is not limited to, the items cataloged in Finding of Fact Number 13.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission make the following
AWARD
1. Defendants shall pay plaintiff compensation at the rate of $171.42 per week, from March 30, 1988, and continuing until further Order of the Commission. That portion of the compensation as has accrued shall be paid in lump sum, subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred as a result of plaintiff's occupational disease, when the bills for the same have been submitted through defendants to the Industrial Commission and approved.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the accrued benefits is HEREBY APPROVED and shall be paid directly to plaintiff's counsel in a lump sum. Thereafter, every fourth check shall be forwarded directly to plaintiff's counsel.
4. The following expert witness fees are HEREBY APPROVED and shall, if not already paid, be paid directly to the following:
Dr. Landis: $275.00
Dr. Shanks: $250.00, both as previously awarded by Order of Scott M. Taylor, filed December 8, 1992.
5. Defendants shall bear the costs.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the __________ day of ________________________, 1995.
 S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ __________________ JAMES J. BOOKER COMMISSIONER
S/ __________________ W. JOEY BARNES DEPUTY COMMISSIONER
JHB/nwm 02/13/95